UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00385-FDW

| | |
|---|---|
| JAMES A. DAYE, | ) |
| Petitioner, | ) |
| vs. | ) ORDER |
| JOHN HERRING, | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court upon Petitioner James A. Daye's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court is Respondent's Motion for Summary Judgment. (Doc. No. 4.)

**I.    BACKGROUND**

Petitioner is a prisoner of the State of North Carolina who, on May 28, 2015, was convicted by a Mecklenburg County jury of first-degree murder. State v. Daye, 790 S.E.2d 752, 2016 WL 3892401, at *2 (N.C. Ct. App. 2016) (unpublished). At the outset of the trial, Petitioner pled guilty to possession of a firearm by a felon. Id.

The North Carolina Court of Appeals summarized the facts from trial as follows:

Prior to the incident at issue, Walter Gregory (Gregory) was in the Hunting Ridge neighborhood, drunk and using profanity in front of children. He was told by a resident, Cecilia Turner (Turner) who had known him for some time, to stop his behavior; in response, he threw a beer bottle, breaking the window of an SUV parked nearby. The SUV belonged to the brother of the roommate of James Daye (defendant). Defendant, his roommate, and his roommate's brother emerged from their housing unit, learned what Gregory had done, chased Gregory down, and beat him. In the following weeks, defendant repeatedly saw Gregory in the area, usually coming from and going to Turner's condominium. Defendant testified that this behavior made him feel threatened. Defendant's roommates testified that Gregory threatened to kill them all.

1

On 5 October 2012, Gregory was sitting outside of Turner's condominium, drinking with others. At around 5:00 p.m., the neighborhood security manager saw the gathering and called police, intending to ban Gregory and his friends from the complex. Banning them would result in trespass charges if they returned. Police arrived, and Gregory left the immediate area, but not the complex. The manager testified that Gregory was extremely aggressive.

According to defendant, defendant was in his car around dusk when Gregory approached him, threatening to kill "everybody in that apartment." The two began fighting until they were separated, at which point defendant fled to his house. According to other witnesses, subsequent to this, Gregory could be seen passing through the area, making threats and shooting gestures with his hand. Defendant emerged from his home with a kitchen knife, attempting to scare Gregory away. When this failed, defendant returned to his home and appeared with a gun. Defendant's friends took the gun away from defendant, and defendant got into another fistfight with Gregory.

Defendant went home and loaded his rifle. Rifle in hand, defendant emerged from his home and approached Gregory. Defendant testified that he saw Gregory reaching for something, possibly a gun. In response, defendant "jumped and . . . pulled the trigger." According to Turner, who witnessed the incident, before defendant shot, defendant said, "Didn't I tell you if you came back in here I was going to kill you?" Other witnesses testified similarly, and further testified that defendant had also threatened to shoot Gregory earlier in the evening.

At roughly 10:28 p.m., 911 received multiple calls about the shooting. Gregory died of a single gunshot wound through the chest. Before entering the chest, the bullet went through his hand, palm first.

Id. at *1-*2. The trial court sentenced Petitioner to life imprisonment without parole for the murder, with a concurrent sentence of 17–30 months' imprisonment for firearm possession. Id.

Petitioner filed a direct appeal, raising one issue – whether the trial court erred in refusing to instruct the jury on second-degree murder and self-defense. Id. The North Carolina Court of Appeals found no error. Id. at *5. Petitioner filed a petition for discretionary review in the North Carolina Supreme Court, which was denied on December 8, 2016. State v. Daye, 790 S.E.2d 752 (N.C. 2016) (Mem).

According to his habeas Petition, Petitioner has not sought post-conviction review in the

2

trial court. (§ 2254 Pet. 3, Doc. No. 1). He filed the instant § 2254 Petition on June 31, 2017, when he placed it in the prison mail system, see Houston v. Lack, 487 U.S. 266, 267 (1988). (§ 2254 Pet. 15). He raises the same ground for relief that he raised on direct appeal. (§ 2254 Pet. 5). Respondent has filed a Motion for Summary Judgment, raising a procedural default defense and contending Petitioner's claim is without merit. (Doc. No. 4).

On August 16, 2017, the Court notified Petitioner, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of his right to respond to the Motion for Summary Judgement. (Doc. No. 6). The Court provided Petitioner thirty (30) days to file a response and warned him that failure to respond could result in the Court granting Respondent's summary judgment motion without further notice. (Doc. No. 6).

Petitioner did not respond. However, the undersigned received a letter from Petitioner on January 22, 2018, inquiring about the status of his Petition and notifying the Court that he had been moved to another prison. (Doc. No. 7). Reasoning that Petitioner may not have received the original Roseboro notice, the Clerk of Court mailed Petitioner another copy at his new address on February 7, 2018. (Feb. 7, 2019 Doc. Entry). Thus, Petitioner had another thirty (30) days to file a response to the Motion for Summary Judgment.

As of the date of this Order, Petitioner has not responded to the summary judgment motion. The Court finds that he has had ample opportunity to do so.

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most

favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### III. DISCUSSION

In his only ground for relief, Petitioner claims he was entitled to an instruction on second-degree murder and self-defense because the jury could have interpreted his imprecise and inconsistent testimony in a variety of ways. (§ 2254 Pet. 5).[1] The North Carolina Court of Appeals held that the trial court did not err in refusing to give those instructions.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court may grant habeas relief to a state prisoner only if the state court's last adjudication of a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (emphasis added), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). A defendant is entitled to a lesser-included offense instruction as a matter of due process for capital cases. Beck v. Alabama, 447 U.S. 625, 638 (1980). However, the United States Supreme Court has never held that such an instruction is required in non-capital state trials. Id. at 638 n.14 (expressly reserving this issue); Robinson v. North Carolina Att'y Gen., 238 F.3d 414, 2000 WL 1793060 (4th Cir. 2000) (unpublished). In

---

[1] Respondent contends this claim is procedurally defaulted because Petitioner only challenged the jury instructions in the state courts on state law grounds. (Summ. J. Br. 3, Doc. No. 5). After reviewing Petitioner's brief on appeal (Resp't's Ex. 4, Doc. No. 5-5), the Court finds the issue to be a close one. Because Petitioner's claim is without merit, regardless of the default issue, the Court confines its analysis to the merits.

the absence of any United States Supreme Court precedent holding that the failure to provide a lesser included offense instruction in non-capital cases implicates a federal right, the state court's conclusion that Petitioner was not entitled to a second-degree murder or self-defense instruction cannot be contrary to or an unreasonable application of clearly established federal law, see § 2254(d)(1), and Petitioner may not obtain relief on this claim.

Moreover, jury instructions are generally matters of state law and procedure not cognizable on federal habeas review. See Bates v. Lee, 308 F.3d 411, 420 (4th Cir. 2002). A federal habeas court's review of allegedly erroneous jury instructions is limited to assessing whether the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973) ("[T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."). Moreover, the state court's factual determinations are presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Under North Carolina law, "[a]n instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." State v. Millsaps, 572 S.E.2d 767, 771 (N.C. 2002) (citing State v. Conaway, 453 S.E.2d 824, 841 (N.C. 1995)). North Carolina recognizes only one crime of murder – an unlawful killing of another with malice aforethought, express or implied. See State v. Hunt, 582 S.E.2d 593, 597 (N.C. 2003). With respect to punishment, the crime of murder is divided into two degrees – first and second-degree. See State v. Davis, 290 S.E.2d 574, 588 (N.C. 1982) (citing N.C. Gen. Stat. § 14-17). The murders classified as murder in the

5

first degree are: (1) murders perpetrated by means of poison, lying in wait, imprisonment, starving, or torture, (2) premeditated murder, and (3) killings occurring in the commission of certain specified felonies "or other felony." Id. Any other intentional and unlawful killing of a human being with malice aforethought, express or implied, is classified by § 14-17 as murder in the second degree. Id.

"In connection with [second-degree murder and voluntary manslaughter], the phrase 'intentional killing' refers not to the presence of a specific intent to kill, but rather to the fact that the act which resulted in death is intentionally committed . . . ." Daye, 790 S.E.2d 752, at *4 (quoting State v. Coble, 527 S.E.2d 45, 47 (2000) (quotations and citations omitted)) (alteration in original). "The difference between second-degree murder and first-degree murder is that, unlike first-degree murder, second-degree murder is committed without premeditation and deliberation." Id. (citing Coble, 527 S.E.2d at 46).

"In order for the trial court to charge the jury on second-degree murder, there had to be evidence of a lack of premeditation and deliberation; that is, there had to be evidence that would allow the jury to acquit [the] defendant of first-degree murder and convict him of second-degree murder." Daye, 790 S.E.2d 752, at *5 (citing Millsaps, 572 S.E.2d at 771). In the instant case, the North Carolina Court of Appeals held that the trial court did not err in declining to instruct the jury on second-degree murder because:

> the evidence showed either that defendant, having earlier threatened to kill Gregory, loaded his gun and approached him with lethal intent, or that defendant's weapon accidentally discharged when he was startled by Gregory's movement. The only evidence that would allow the jury to acquit defendant of first-degree murder was the possibility of accident, and that evidence would not permit the jury to convict defendant of second-degree murder.

Daye, 790 S.E.2d 752, at *5.

The court of appeals also concluded the trial court did not err in refusing to give a self-defense instruction. Id. ("With respect to self-defense, we have previously held that accident precludes self-defense.") (citing State v. Gaston, 748 S.E.2d 21, 25 (N.C. Ct. App. 2013))). In State v. Williams, the North Carolina Supreme Court held that:

> [the] defendant [was] not entitled to an instruction on self-defense while still insisting that he did not fire the pistol at anyone, that he did not intend to shoot anyone[,] and that he did not know anyone had been shot. Clearly, a reasonable person believing that the use of deadly force was necessary to save his or her life would have pointed the pistol at the perceived threat and fired at the perceived threat. The defendant's own testimony, therefore, disproves the first element of self-defense.

Gaston, 748 S.E.2d at 25 (quoting State v. Williams, 467 S.E .2d 392, 394 (1996)).

Here, the court of appeals found Petitioner's "own testimony that the gun discharged accidentally when he 'jumped' showed a lack of intent of any kind, let alone a reasonable belief that the use of deadly force against Gregory was necessary to save [his own] life." Daye, 790 S.E.2d 752, at *5. "As such," the court concluded, Petitioner's "testimony disproves the first element of self-defense, and the trial court did not err in declining to instruct on self-defense." Id.

Petitioner has not presented evidence sufficient to rebut the presumption permitted the court of appeals' factual determinations or to establish that the failure of the trial judge to give the requested instruction rendered the entire trial fundamentally unfair. Accordingly, Respondent's Motion for Summary Judgment shall be granted and the Petition for Writ of Habeas Corpus denied.

**IT IS, THEREFORE, ORDERED** that:

1. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED**;

2. Respondent's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: March 29, 2018

Frank D. Whitney
Chief United States District Judge